IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

TEXAS FARM BUREAU, *et al.*,

      Plaintiffs,

v.

THE UNITED STATES DEPARTMENT
OF AGRICULTURE, *et al.*,

      Defendants.

2:25-CV-181-Z

## ORDER

Before the Court is Plaintiffs' Motion for Class Certification ("Motion") filed February 27, 2026. ECF Nos. 18. Defendants responded on March 11, 2026, and do not oppose the Motion. ECF No. 20 ("Defendants take no substantive position on Plaintiffs' motion for class certification."). The Court deferred consideration of the Motion until after the deadline for third-party intervenor motions. ECF No. 24. That deadline has passed, and the Court now considers the Motion. For the reasons herein, the Motion (ECF No. 18) is **GRANTED**.

### BACKGROUND

### I. The Challenged USDA Programs

The United States Department of Agriculture ("USDA") administers government benefits programs for farmers and ranchers. *See* ECF No. 4 at 1. Some USDA programs provide additional benefits to certain categories of farmers, including those who are "socially disadvantaged." *See id.* at 1–2. Plaintiffs' Amended Complaint discusses two such programs: the Noninsured Crop Disaster Assistance Program ("NAP") and the Environmental Quality Incentives Program ("EQIP"). *Id.* at 6–10.

NAP provides catastrophic coverage for certain specialty crops and crops that are not otherwise federally insurable. 7 U.S.C. § 7333(a). Farmers must submit a timely application to be

eligible for assistance, and most farmers must pay a service fee of up to $1,950. *Id.* § 7333(b)(1), (k)(1). But certain farmers, including "socially disadvantaged" farmers, are not required to pay the service fee. *Id.* § 7333(k)(2) ("The Secretary shall waive the service fee . . . in the case of a . . . socially disadvantaged farmer, as defined by the Secretary."). By statute, "socially disadvantaged farmer" is defined as a farmer who is a member of "a group whose members have been subjected to racial, ethnic, or gender prejudice because of their identity as members of a group without regard to their individual qualities." *Id.* § 2003(e)(1)-(2).[1] USDA's Farm Service Agency regulations generally define "socially disadvantaged farmer" to include a member of the following groups: "(1) American Indians or Alaskan Natives, (2) Asians or Asian–Americans, (3) Blacks or African–Americans, (4) Hispanics or Hispanic–Americans, (5) Native Hawaiians or other Pacific Islanders, and (6) Women." 7 C.F.R. §§ 718.2 (defining "[s]ocially disadvantaged farmer"), 1437.3 (applying the definitions in Part 718 to NAP).

EQIP provides grants to producers "to promote agricultural production, forest management, and environmental quality" on their land. 16 U.S.C. § 3839aa. Like NAP, EQIP provides additional benefits to "socially disadvantaged" farmers and ranchers. For example, five percent of funds available for EQIP must be used to assist "socially disadvantaged farmers or ranchers." 16 U.S.C. § 3841(h)(1)(B)(ii). By statute, "socially disadvantaged farmer or rancher" is defined as a farmer or rancher who is a member of a group "whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(5)-(6) (defining the term); 16 U.S.C. § 3801(a)(23) (applying the definitions in Section 2279 to EQIP). Additionally, "historically underserved" producers can receive a higher payment rate and advance payments. 7 C.F.R. §§ 1466.23(b)(3),

---

[1] It is not clear that the definition of "socially disadvantaged farmer" in Section 2003 applies to NAP. *See* 7 U.S.C. § 2003(e)(2) (defining the term "[a]s used in this section."). Nonetheless, USDA seems to rely on Section 2003 as its source of authority for defining the term as used in NAP. *See* ECF No. 4 at 8. (citing 7 C.F.R. § 718).

1466.24(d)(1). "Historically underserved" producers include "socially disadvantaged farmer[s] or rancher[s]." 7 C.F.R. § 1466.3. USDA's regulations generally define "socially disadvantaged farmer or rancher" for purposes of conservation programs as a farmer or rancher who is a member of one of the following groups: "(1) American Indians or Alaskan Natives; (2) Asians or Asian–Americans; (3) Blacks or African Americans; (4) Hispanics; and (5) Native Hawaiians or other Pacific Islanders." 7 C.F.R. § 1410.2.[2]

### II. This Lawsuit

Plaintiffs bring this lawsuit and seek class certification "to challenge [NAP, EQIP,] and all other USDA programs that discriminate against farmers and ranchers based on race or sex using the 'socially disadvantaged' category." ECF No. 4 at 2. Plaintiffs are Texas Farm Bureau—a membership advocacy organization for farmers and ranchers—and two individual farmers, Mark Cadra and Timothy Assiter. *Id.* at 3–4.[3] The individual Plaintiffs allege USDA discriminated against them and will continue to discriminate against them based on their race and sex by denying them additional benefits they would receive if they were members of a "socially disadvantaged" group. ECF Nos. 19-1, 19-2. Texas Farm Bureau alleges its members, including the individual Plaintiffs, have been and will be discriminated against based on their sex and race in the same way. ECF No. 4 at 16.

Earlier this year, the Department of Justice concluded that USDA programs giving preferential treatment to "socially disadvantaged" farmers or ranchers discriminate based on race or sex. ECF No. 23 at 1. Accordingly, it determined the programs are unconstitutional, so it will

---

[2] Women are considered socially disadvantaged by virtue of sex alone for USDA programs *except* those classified as conservation programs, such as EQIP. *See* ECF No. 4 at 11–12 (explaining and quoting from USDA Form CCC-860 which allows farmers and ranchers to self-classify their socially disadvantaged status); *see also id.* ("Note that if applicant checks 'women' without also selecting the other category the selection does not make the applicant socially disadvantaged for conservation programs.").

[3] Mr. Cadra and Mr. Assiter are both members of Texas Farm Bureau. ECF No. 4 at 5.

not defend the constitutionality of race- or sex-based preferences in those programs, including in this litigation. *Id.* at 1–2.[4]

### III. Request for Class Certification

Plaintiffs seek to certify a single class as follows:

> All farmers and ranchers in the United States who are encountering, or who will encounter, race or sex discrimination from the United States Department of Agriculture (USDA) based on their exclusion from its "socially disadvantaged farmer or rancher" designation, and have been or will be denied benefits or program access on that basis.

ECF No. 18 at 1. They ask the court to define the following two class claims:

> (1) Whether the United States Department of Agriculture is violating the Constitution when it discriminates based on race in administering programs under Titles 7 and 16 of the United States Code and Code of Federal Regulations through the use of the "socially disadvantaged farmer or rancher" designation; and

> (2) Whether the United States Department of Agriculture is violating the Constitution when it discriminates based on sex in administering programs under Titles 7 and 16 of the United States Code and Code of Federal Regulations through the use of the "socially disadvantaged farmer or rancher" designation.

---

[4] The Government's agreement with the Plaintiffs' legal position does not deprive this Court of jurisdiction. To be sure, the Fifth Circuit expressly held "where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy." *Pool v. City of Houston*, 87 F.4th 733, 733–34 (5th Cir. 2023) (*Pool II*) (citations omitted). But in that case, the government *also* stated it "would and could not enforce" the allegedly unconstitutional provisions, which created a "faux dispute[]." *Id.* at 734; *see also Pool v. City of Houston*, 163 F.4th 284, 288–89 (5th Cir. 2026) (*Pool III*) (emphasizing the importance of the government's non-enforcement in the holding of *Pool II*). Here, the Plaintiffs' injury persists—the USDA is enforcing the allegedly unconstitutional designations that deprive Plaintiffs of additional benefits they would receive if they were of a different race or sex. ECF No. 4 at 2. Thus, this Court has jurisdiction over this case. *See United States v. Windsor*, 570 U.S. 744, 756 (2013) ("[T]he Government's agreement with [Plaintiff's] position would not have deprived the District Court of jurisdiction to entertain and resolve the . . . suit[,] for her injury . . . was concrete, persisting, and unredressed."). Indeed, even the principal dissent in *Windsor* agreed the *district court's* jurisdiction was sound. *See Windsor*, 570 U.S. at 786 (Scalia, J., dissenting) ("Where the Executive is enforcing an unconstitutional law, suit will of course lie; but if, in that suit, the Executive admits the unconstitutionality of the law, the litigation should end in an order or a consent decree enjoining enforcement."). Moreover, this does not seem to be an "unusual" case, like *Windsor*, in which the Government's legal concession "was not preceded by an adverse judgment." *Windsor*, 570 U.S. at 753–54; *see* ECF No. 23 (Government's 530D letter, citing *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023)).

4

*Id.* at 1–2. They further ask the Court to appoint Mr. Cadra and Mr. Assiter as class representatives, to appoint Southeastern Legal Foundation as class counsel, and to find no class notice is required. *Id.*[5]

### LEGAL STANDARD

Class certification is governed by Federal Rule of Civil Procedure 23. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).

Rule 23(a)'s four threshold requirements are: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). These four requirements are commonly referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See Maldonado*, 493 F.3d at 523. The Fifth Circuit recognizes an implicit *fifth* requirement: the existence of an ascertainable class. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23.").

If the requirements of Rule 23(a) are satisfied, Federal Rule of Civil Procedure 23(b) provides three types of class actions can be maintained. Plaintiffs here seek class certification under Rule 23(b)(2). ECF No. 18. The district court can certify such a class when the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive

---

[5] The Plaintiffs also ask that "no further discovery related to determining this motion be ordered." ECF No. 18 at 2. Because the Court finds it can determine this Motion based on Plaintiffs' brief and attached exhibits, no further discovery on this Motion is necessary.

relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart*, 564 U.S. at 348 (internal marks and citation omitted). Thus, "[a] district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996). The district court's obligation to ensure the Rule 23 requirements are satisfied is not relaxed simply because the motion to certify a class is unopposed. *See Beech v. Litig. Prac. Grp., PC*, No. 1:22-CV-057, 2024 WL 200937, at *2 (S.D. Miss. Jan. 18, 2024) (collecting cases). The certification decision lies in the discretion of the district court, "but that discretion must be exercised within the framework of [R]ule 23." *Castano*, 84 F.3d at 740. "The [n]amed [p]laintiffs, as the parties seeking certification, bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012).

The Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ("*CASA*") is also relevant here. In *CASA*, the Supreme Court held federal courts do not have the authority to grant so-called "universal injunctions"—injunctions prohibiting the government from enforcing a law against *anyone*, not just the plaintiffs in the suit. *See id.* at 837–38. Justice Alito noted that *CASA* "will have very little value if district courts award relief to broadly defined classes without following Rule 23's procedural protections for class certification." *CASA*, 606 U.S. at 867 (Alito, J., concurring) (internal marks and citations omitted). Thus, district courts must avoid a "hasty application" of Rule 23. *Id.* at 867–68. Justice Alito did *not* say Rule 23 classes are

categorically inappropriate for this kind of relief. *Id.* at 868 ("Rule 23 may permit the certification of nationwide classes in some discrete scenarios."). The important point is district courts must rigorously apply Rule 23. *Id.* ("[D]istrict courts should not view [*CASA*] as an invitation to certify nationwide classes without scrupulous adherence to the rigors of Rule 23.").

Bearing all this in mind, the Court turns to the application of Rule 23 in this case.

ANALYSIS

### I. Numerosity

The numerosity requirement is satisfied if "joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). While "the number of members in a proposed class is not determinative of whether joinder is impracticable," it is obviously a relevant consideration. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Courts regularly certify classes with fewer than 1,000 potential plaintiffs. *See id.* (approving a class of 100 to 150 members); *Boykin v. Ga.-Pac. Corp.*, 706 F.2d 1384, 1386 (5th Cir. 1983) (approving a class of 317 members). The "geographical dispersion of the class" is another factor that supports a numerosity finding. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).

Plaintiffs argue there are "thousands" of farmers and ranchers in the proposed class, so the numerosity requirement is satisfied. ECF No. 19 at 5. In support they cite a USDA Census of Agriculture showing that in 2022 there were more than 3.2 million white farmers, and more than two million white *male* farmers. *Id.* Such individuals fall outside the USDA's "socially disadvantaged" designation for some or all programs. White farmers constitute more than 90% of farmers in USDA's census. *Id.* Plaintiffs note that in 2022, the USDA paid benefits to more than 200,000 applicants in just one program. *Id.* Since most farmers are

white, and many are white males, many of those 200,000 applicants were white or white male farmers "who were discriminated against based on their race and sex." *Id.*

Here, Plaintiffs presented reasonable evidence that the size of the class is likely to be in at least the thousands. That evidence is unchallenged. *See* ECF No. 20. The size of the proposed class makes joinder impracticable, especially given the likely geographic dispersion of the class members. Therefore, the Court finds Plaintiffs' proposed class satisfies the numerosity requirement.

## II. Commonality

Commonality is satisfied if "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This language is easy to misread, because "[a]ny competently crafted class complaint literally raises common 'questions.'" *Wal-Mart*, 564 U.S. at 349 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–132 (2009). Commonality requires more: "that the class members have suffered the same injury." *Id.* at 349–50 (internal marks omitted). "In order to satisfy commonality . . . a proposed class must prove that the claims of every class member depend upon a common contention that is capable of classwide resolution." *Stukenberg*, 675 F.3d at 838 (internal marks omitted). This occurs when the "common contention . . . [is] of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. This analysis sometimes "entail[s] some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.

Plaintiffs argue the proposed class members share a common question of law: "does USDA's 'socially disadvantaged' designation unlawfully discriminate against them based on race or sex?" ECF No. 19 at 6. They argue the proposed class members have suffered "the same kind of injury," even if the injuries may have been caused by one of several different

8

programs. *Id.* at 7–8. And even to the extent analysis of individual programs is necessary, they argue the legal question is common to all class members who participated in each program. *Id.* at 8.

The Court concludes the proposed class satisfies the commonality requirement. The injury—race and sex discrimination based on exclusion from the USDA's "socially disadvantaged" farmer or rancher designation—is common to the entire class. While many programs may utilize the designation, they seem to rely on the same definitions of "socially disadvantaged." *See* ECF NO. 4 at 11–12. Whether this designation violates the Constitution is central to the validity of each potential class member's claim. Moreover, it is capable of classwide resolution. If the designation does not violate the Constitution, the class members do not have valid claims. If it does, they may.[6] And as Plaintiffs note, even to the extent the constitutionality of individual programs implementing the designation depends on a review of each program—for example, to determine if it can satisfy strict or intermediate scrutiny— those questions will be common to the class members who participated in each program. Accordingly, Plaintiffs' proposed class satisfies the commonality requirement.

### III. Typicality

Typicality is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at 625 (internal marks and quotations omitted). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). "Both serve as guideposts for determining whether under the particular

---

[6] The Court notes again Defendants have already conceded the unconstitutionality of the designations. *See* ECF No. 23.

circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *James v. City of Dall.*, 254 F.3d 551, 571 (5th Cir. 2001) (citations omitted).

Plaintiffs argue the proposed class representatives—Mr. Cadra and Mr. Assiter—have claims typical of the class because they, like all the class members, face the same injury: discrimination based on race and sex from the USDA's "socially disadvantaged" designation. ECF No. 19 at 9.

The Court concludes the typicality requirement is satisfied. For similar reasons as the commonality requirement, the claims of the proposed class representatives are typical of those of the class. Mr. Cadra and Mr. Assiter are both white male farmers. *See* ECF Nos. 19-1 at 1, 19-2 at 1. Both forms of USDA's alleged discrimination apply to them, because they would not be denied enhanced benefits if they were a different race *or* sex. The proposed class consists of at least: (1) other white male farmers who also face both forms of discrimination and (2) white female farmers. White female farmers do not face sex discrimination under the USDA programs but do face race discrimination in at least conservation programs because women are not considered a "socially disadvantaged" group for those programs. *See* ECF No. 4 at 11. Thus, while some proposed class members may not face both forms of discrimination, Mr. Cadra and Mr. Assiter face the same discrimination as each proposed class member.[7] Their claims are thus typical of the class they seek to represent.

---

[7] While the parties have not addressed this point, the proposed class may also consist of non-white male and female farmers who face discrimination because they do not belong to one of the five racial groups USDA defines as "socially disadvantaged." Mr. Cadra and Mr. Assiter's claims are typical of these potential class members' claims for the same reasons.

10

## IV. Adequacy of Representation

The adequacy of representation requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Rule 23 adequacy "encompasses three separate but related inquiries[:] (1) the zeal and competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017) (internal marks omitted). The commonality and typicality requirements "tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13. Throughout the litigation, the court "must continue carefully to scrutinize the adequacy of representation and withdraw certification if such representation is not furnished." *Grigsby v. N. Miss. Med. Ctr., Inc.*, 586 F.2d 457, 462 (5th Cir. 1978).

Plaintiffs argue they satisfy the adequacy-of-representation requirement for at least three reasons: (1) Mr. Cadra and Mr. Assiter are taking an active role in the litigation; (2) there are no conflicts of interest; and (3) their counsel are experienced attorneys who have litigated similar cases and work for an organization with a "long history litigating against unlawful racial preferences." ECF No. 19 at 10–11.

Plaintiffs satisfy the adequacy of representation requirement. Plaintiffs assert that they have and will take an active role in the litigation. ECF No. 19 at 10–11. Additionally, for similar reasons as in the commonality and typicality sections, there are no apparent conflicts of interest between the class representatives and the members of the proposed class. Finally, Plaintiffs' counsel has demonstrated that it is competent to zealously represent the class, particularly given both the individual attorneys' time spent on this and similar cases.

11

*See* ECF Nos. 19-3, 19-4.[8] For these reasons, the Plaintiffs satisfy the adequacy-of-representation requirement.

### V. Ascertainability

"[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam). This is an implied prerequisite of Rule 23. *See John*, 501 F.3d at 445. "There can be no class action if the proposed class is amorphous or imprecise." *Id.* at 445 n.3 (citations omitted). "However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding." *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (citations omitted). The ascertainability requirement is relaxed for Rule 23(b)(2) certifications because the relief sought is an injunction or declaratory relief against the defendants. *See In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 (5th Cir. 2004).[9]

Plaintiffs argue the proposed class is ascertainable because it is precisely defined. ECF No. 19 at 11. It includes anyone who would be eligible for a USDA program or for enhanced benefits from a USDA program if they were of a different race or sex. *Id.* They note that USDA knows who is included in the class because they require recipients to record whether they are "socially disadvantaged" on form CCC-860. *Id.* at 12.

The Court finds the proposed class is ascertainable. The class definition is precise and adequately defined: it includes all farmers or ranchers in the U.S. who (1) have encountered or will encounter race or sex discrimination because of their exclusion from USDA's "socially

---

[8] Defendants do not contest or contradict any of Plaintiffs' "adequacy of representation" claims or arguments. ECF No. 20.

[9] Other circuits have found ascertainability does not apply *at all* in the Rule 23(b)(2) context. *See Miller v. Vilsack*, No. 4:21-CV-595, 2021 WL 11115194, at *7 n.1 (N.D. Tex. July 1, 2021) (collecting out-of-circuit cases).

disadvantaged" category; and (2) have been or will be denied benefits or program access on that basis. ECF No. 18 at 1. As Plaintiffs note, applicants' "socially disadvantaged" status is recorded on USDA's form CCC-860. *See* ECF No. 4 at 11–12. While some proposed class members who *will* encounter discrimination in the future may have never submitted this form, many of the class members have. Regardless, the class is definite enough to identify class members at some stage of the litigation. *See Frey*, 602 F. App'x at 168. Thus, at least under the relaxed standard for a Rule 23(b)(2) class, the class here is ascertainable.

### VI. Rule 23(b)(2)

To certify a Rule 23(b)(2) class, the Court must find the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. "It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

Plaintiffs argue Rule 23(b)(2) is satisfied because the proposed class was harmed in the same way and seeks only specific injunctive relief. ECF No. 19 at 12. "An order that enjoins Defendants from discriminating based on race or sex using the 'socially disadvantaged' designation across its programs will cure the prospective injuries of the whole class." *Id.* Thus, plaintiffs argue they have satisfied the requirement to show how a district court could craft an appropriate injunction to satisfy Rule 23(b)(2), even without defining the precise terms of the injunction. *Id.* at 12–13. Moreover, the plaintiffs note they are not requesting money damages. *Id.* at 13.

Rule 23(b)(2) class certification is appropriate here. USDA acted or refused to act in a way that applies generally to the class because it denied additional benefits based on lack of membership in its "socially disadvantaged" designation. A single injunction or declaratory judgment deeming the designations unconstitutional and enjoining USDA from using the designations to deny additional benefits would provide relief to the entire class. There is no argument individual class members are entitled to individualized injunctions against the Defendants. *See Wal-Mart*, 564 U.S. at 360. Therefore, Rule 23(b)(2) is satisfied. *See Miller*, 2021 WL 11115194, at *14–15 (certifying a similar class under Rule 23(b)(2)).

### VII. Notice

The Plaintiffs have requested no class notice be required. ECF No. 18 at 2. For a Rule 23(b)(2) class, "the court *may* direct appropriate notice to the class." FED. R. CIV. P. 23(c)(2)(A) (emphasis added). Notice practices are less stringent for Rule 23(b)(2) class actions because the greater "cohesiveness or unity in the class . . . minimizes the need for notice." *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993–94 (5th Cir. 1981) (internal marks omitted). Notice in a Rule 23(b)(2) class action is typically only provided in so-called "hybrid" Rule 23(b)(2) class actions in which individual monetary damages are sought in addition to class-wide injunctive or declaratory relief. *See Ayers v. Thompson*, 358 F.3d 356, 375–76 (5th Cir. 2004). The proposed class here does not request monetary damages. ECF No. 19 at 13. The Court finds notice should not be required.

### CONCLUSION

For the reasons above, Plaintiffs' Motion for Class Certification (ECF No. 18) is **GRANTED**. The Court appoints Timothy Assiter and Mark Cadra as class representatives. Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B), the Court defines the class as follows:

All farmers and ranchers in the United States who are encountering, or who will encounter, race or sex discrimination from the United States Department of Agriculture (USDA) based on their exclusion from its "socially disadvantaged farmer or rancher" designation, and have been or will be denied benefits or program access on that basis.

Further pursuant to Rule 23(c)(1)(B), the Court defines two class claims as follows:

(1) Whether the United States Department of Agriculture is violating the Constitution when it discriminates based on race in administering programs under Titles 7 and 16 of the United States Code and Code of Federal Regulations through the use of the "socially disadvantaged farmer or rancher" designation; and

(2) Whether the United States Department of Agriculture is violating the Constitution when it discriminates based on sex in administering programs under Titles 7 and 16 of the United States Code and Code of Federal Regulations through the use of the "socially disadvantaged farmer or rancher" designation.

Further, after making the considerations required in Rules 23(g)(1) and (4), the Court finds Southeastern Legal Foundation has sufficient experience handling class actions, is knowledgeable in this area of law, has committed and will continue to commit appropriate resources to representing the class, and will fairly and adequately represent the interests of the class. *See* ECF Nos. 19-3, 19-4. Accordingly, the Court appoints Southeastern Legal Foundation as class counsel.

**SO ORDERED.**

July 14, 2026

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

15