IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| TEXAS FARM BUREAU, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>Defendants. | 2:25-CV-181-Z |

**CONSENT ORDER**

This action was brought by Plaintiffs Texas Farm Bureau, Mark Cadra, and Timothy Assiter, against Defendants the United States Department of Agriculture (USDA), Brooke Rollins, in her official capacity as Secretary of the United States Department of Agriculture, William Beam, in his official capacity as Administrator of the Farm Service Agency, Colton Buckley, in his official capacity as Chief of the Natural Resources Conservation Service, and the United States of America, under the Fifth Amendment to the United States Constitution and the Administrative Procedure Act (APA). Plaintiffs and Defendants (collectively, the Parties) agree to this Order as final and binding between themselves as to the issues raised in Plaintiffs' Complaint in this action.

**NOW, THEREFORE**, it is hereby **AGREED BY THE PARTIES**, through their undersigned counsel, and **ORDERED BY THE COURT**, that:

**I. STATUTORY BACKGROUND**

1. Congress has enacted numerous programs under Titles 7 and 16 of the United States Code that require USDA to give preferential treatment to "socially disadvantaged" farmers or ranchers. *E.g.*, 7 U.S.C. §§ 1524(a)(3), 1627c(d)(5)(C), 1627c(i)(3)(A)(ii)(II), 1924(d), 1924(e), 1932(e)(11)(B), 1935(a)(l), 1935(d), 1935(e)(2), 1936, 1936c(b), 1936c(d), 1983b(c)(3),

1985(c), 1985 note, 2000(c)(4)(B), 2003, 2008x, 2279, 2279a, 6712, 6934, 7333(k)(2), 7333(l)(3), 7625(c), 8111(c), 8711(d)(2), 8752(d)(2), 9014(d)(2), 9054(c)(4), 9081(a)(l), 9081(d)(4); 16 U.S.C. §§ 590c, 590h, 2202a(b), 3831c(b)(3)(E), 3839aa-2(d)(4), 3841(h), 3871e(d).

2. Whether by statute or by regulation, the programs define "socially disadvantaged" farmers or ranchers to mean members of certain racial or ethnic groups. *E.g.*, 7 U.S.C. § 2279(a)(5) and (6); 7 C.F.R. §§ 701.2(b), 1410.2(b), 1450.2(b), 1464.3, 1466.3, 2500.103. Some of the programs define "socially disadvantaged" farmers or ranchers to mean women as well. *E.g.*, 7 U.S.C. § 2003(e); 7 C.F.R. §§ 7.3, 718.2, 761.2(b), 1430.402, 4284.903.

3. For example, the Environmental Quality Incentives Program (EQIP) defines "socially disadvantaged farmer or rancher" to mean a farmer or rancher who is a member of "a group whose members have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." 7 U.S.C. § 2279(a)(5) and (6); *see* 16 U.S.C. §§ 3801(a)(23), 3839aa-2(d)(4), 3841(h). USDA regulations governing EQIP further identify "American Indians or Alaskan Natives," "Asians or Asian-Americans," "Blacks or African Americans," "Hispanics," and "Native Hawaiians or other Pacific Islanders" as "[s]ocially disadvantaged groups." 7 C.F.R. § 1410.2(b).

4. Similarly, USDA regulations governing the Noninsured Crop Disaster Assistance Program (NAP) define "[s]ocially disadvantaged farmer or rancher" to mean "a farmer or rancher who is a member of a socially disadvantaged group whose members have been subjected to racial, ethnic, or gender prejudice because of their identity as members of a group without regard to their individual qualities." 7 C.F.R. § 718.2; *see* 7 U.S.C. § 7333(k)(2) and (l)(3); 7 C.F.R. § 1437.3. Those regulations further identify "American Indians or Alaskan Natives," "Asians or AsianAmericans," "Blacks or African-Americans," "Hispanics or Hispanic-Americans," "Native Hawaiians or other Pacific Islanders," and "Women" as "[s]ocially disadvantaged groups." 7 C.F.R. § 718.2.

## II. STIPULATIONS

5. In other litigation concerning USDA programs with "socially disadvantaged" preferences implemented by discretionary regulations and funding notices, Defendants previously defended the preferential categories as seeking to remedy past discrimination. *See, e.g.*, *Strickland v. United States Dep't of Agric.*, 736 F. Supp. 3d 469, 476 (N.D. Tex. 2024). Defendants, however, have reevaluated their position, and USDA has rescinded regulations that had implemented such preferences under the authority of 7 U.S.C. § 2008b and 16 U.S.C. §§ 835 and 3844, among others. *See* Removal of Unconstitutional Preferences Based on Race and Sex in Response to Court Ruling, 90 Fed. Reg. 30555, 30556–57 (July 10, 2025).

6. Upon review of the statutory programs under Titles 7 and 16 that require USDA to give preferential treatment to "socially disadvantaged" farmers or ranchers (the Programs), Defendants have determined that the Programs' uses of race- and sex-based classifications are unconstitutional with respect to the following statutes and their implementing regulations: 7 U.S.C. §§ 1524(a)(3), 1627c(d)(5)(C), 1627c(i)(3)(A)(ii)(II), 1924(d), 1924(e), 1932(e)(11)(B), 1935(a)(l), 1935(d), 1935(e)(2), 1936, 1936c(b), 1936c(d), 1983b(c)(3), 1985(c), 1985 note, 2000(c)(4)(B), 2003, 2008b, 2008x, 2279, 2279a, 6712, 6934, 7333(k)(2), 7333(l)(3), 7625(c), 8111(c), 8711(d)(2), 8752(d)(2), 9014(d)(2), 9054(c)(4), 9081(a)(l), 9081(d)(4); 16 U.S.C. §§ 590c, 590h, 2202a(b), 3831c(b)(3)(E), 3835, 3839aa-2(d)(4), 3841(h), 3844(a)(2)(B), 3871e(d). *See* Letter for Mike Johnson, Speaker, House of Representatives, from D. John Sauer, Solicitor General, Department of Justice, *Re: Race-and Sex-Based Preferences in USDA Programs Under Titles 7 and 16 of the United States Code* at 1 (Feb. 9, 2026) ("530D Letter"); *see also Department of Agriculture Preferences for "Socially Disadvantaged" Groups*, 50 Op. O.L.C. __ (June 22, 2026) ("*Socially Disadvantaged Groups*").

7. The Parties acknowledge that the Programs' race-based classifications are subject to strict scrutiny and the Programs' sex-based classifications are subject to intermediate scrutiny.

8. Strict scrutiny considers whether a race-based preference serves a "compelling" governmental interest and is "narrowly tailored" to further that interest. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181, 206–07 (2023) (*SFFA*). In *SFFA*, the Supreme Court rejected the argument that race-based admissions preferences can be justified alone by the government's interest in "remedy[ing] the effects of societal discrimination." *Id.* at 226. In addition, the Court explained that by relying on "racial categories" that were "arbitrary," "overbroad," and "underinclusive," the admissions programs had "fail[ed] to articulate a meaningful connection between the means they employ and the goals they pursue." *Id.* at 215–16. The Court also emphasized that the programs' reliance on race had no "logical end point." *Id.* at 221 (citation omitted). In light of the Supreme Court's decision in *SFFA*, Defendants have determined that an interest in remedying the effects of societal discrimination cannot justify the use of race-or sex-based preferences in the Programs, *i.e.*, the programs under Titles 7 and 16 that require USDA to give preferential treatment to "socially disadvantaged" farmers or ranchers. Defendants have also determined that, as in *SFFA*, those preferences rely on arbitrary, overbroad, and underinclusive categories and lack any logical end point. Therefore, the Programs' race-based preferences do not satisfy constitutional scrutiny. *See* 530D Letter; *see also Socially Disadvantaged Groups*, 50 Op. O.L.C. at *11–13.

9. Intermediate scrutiny considers whether a sex-based preference "serves important governmental objectives" and whether "the discriminatory means employed are substantially related to the achievement of those objectives." *United States v. Virginia*, 518 U.S. 515, 533

(1996) (cleaned up). The justification for the classification must be "exceedingly persuasive" and "genuine, not hypothesized or invented post hoc. . . ." *Id.* There must be a "close means-end fit," meaning that "the gender-based means . . . serve[s] the posited end," *Sessions v. Morales-Santana*, 582 U.S. 47, 67–68 (2017), and the measures cannot "classify unnecessarily and overbroadly by gender when more accurate and impartial lines can be drawn," *id.* at 63 n.13. Based on a review the Programs' sex-based classifications against these standards, Defendants have determined that the Programs do not satisfy constitutional scrutiny. *See* 530D Letter; *see also Socially Disadvantaged Groups*, 50 Op. O.L.C. at *13–14.

10. Defendants do not admit to liability under the Constitution or laws of the United States and assert that they have acted in full compliance with all applicable laws; provided, however, that Defendants stipulate for the purposes of this Consent Order that the determination of USDA program benefits using race- and sex-based categories is not supported by the Constitution and violates the equal protection component of the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

11. Defendants further stipulate and agree not to contest that Plaintiffs are "prevailing parties" for purposes of the Equal Access to Justice Act (EAJA) and Federal Rule of Civil Procedure 54(d)(1), or to otherwise contest Plaintiffs' eligibility for fees under the EAJA, while reserving the right to contest the specific amount of any such fees. Within 60 days of entry of this Consent Order, the Parties will file a Joint Status Report with the Court informing it whether the Parties have reached an agreement on attorneys' fees and costs. If the Parties have not reached an agreement at the time they file the Joint Status Report, they will include a proposed briefing schedule for litigating the amount of attorneys' fees and costs. After briefing has concluded, the Court will determine the amount of attorneys' fees and costs.

## III. Agreement for Court Order and Fairness of Class Action Settlement

12. Based on the stipulation set forth in Paragraph 10 above and its independent analysis, the Court hereby holds and declares that the programs under Titles 7 and 16 that require USDA to give preferential treatment to "socially disadvantaged" farmers or ranchers based on race- and sex-based classifications are unconstitutional under the Equal Protection principles protected by the Due Process Clause of the Fifth Amendment to the United States Constitution, with respect to the following statutes and their implementing regulations: 7 U.S.C. §§ 1524(a)(3), 1627c(d)(5)(C), 1627c(i)(3)(A)(ii)(II), 1924(d), 1924(e), 1932(e)(11)(B), 1935(a)(l), 1935(d), 1935(e)(2), 1936, 1936c(b), 1936c(d), 1983b(c)(3), 1985(c), 1985 note, 2000(c)(4)(B), 2003, 2008b, 2008x, 2279, 2279a, 6712, 6934, 7333(k)(2), 7333(l)(3), 7625(c), 8111(c), 8711(d)(2), 8752(d)(2), 9014(d)(2), 9054(c)(4), 9081(a)(l), 9081(d)(4); 16 U.S.C. §§ 590c, 590h, 2202a(b), 3831c(b)(3)(E), 3835, 3839aa-2(d)(4), 3841(h), 3844(a)(2)(B), 3871e(d).

13. Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. Specifically whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

14. Following a hearing held November 19, and as further elaborated in the Court's separate Order entered this date, the Court has concluded that the parties' stipulated compromise for declaratory judgment is fair, reasonable, and adequate.

15. The Court's declarations are binding on the parties, including all Defendants, in a conclusive final judgment.

16. Based on the stipulation set forth in Paragraph 11 above, the Court orders Defendants to pay Plaintiffs' reasonable attorneys' fees and costs, as agreed upon by the Parties or ordered by the Court.

**IV. Individual and Class Release; Continuing Jurisdiction**

17. **Individual Plaintiffs' Release.** The Consent Order, once finally approved and effective—and following the Parties' or the Court's determination, and Defendants' payment, of Plaintiffs' attorneys' fees and costs—resolves in full all claims, agreements, actions, cases, causes of action, compromises, controversies, costs, damages, debts, demands, disputes, expenses, judgments, liabilities, payments, promises, and suits of any nature whatsoever which are based upon or could be based upon or arise from the facts alleged in Plaintiffs' Complaint, whether or not known, against Defendants or their current and former agents, servants, officers, officials, and/or employees, in their individual and official capacities, by the individually named Plaintiffs, their agents, heirs, and assigns, involving violations of law or constitutional rights, including, without limitation, their Fifth Amendment rights or any other federal law, regulation, duty, or obligation, or any other legal theory, action or cause of action. When the Consent Order is final, as of the date the Court enters this Order, the individually named Plaintiffs, their agents, heirs, and assigns, waive all rights to any and all claims relating to the allegations in the Complaint under any theory or cause of action whatsoever under federal law. This waiver and release shall include a full release and waiver of unknown rights based on claims (including any individual claims) relating to the allegations in the Complaint.

18. **Limitation on Individual Waiver.** Notwithstanding the foregoing, Plaintiffs reserve their rights to make similar claims under state and federal law, against parties other

than Defendants or their officers and/or employees. In addition, nothing in Paragraph 17 shall be construed as a waiver of any claims that arise entirely after the effective date of the Consent Order. In addition, nothing in Paragraph 17 shall be construed as a waiver of any claims of class members other than the individually named Plaintiffs. Finally, nothing in Paragraph 17 or Paragraph 19 shall be construed as a waiver of any right to enforce the terms of this Consent Order.

19. **Class Release.** Upon the later of the effective date of the Consent Order or the payment of Plaintiffs' attorney's fees and costs, Plaintiffs, on behalf of the certified class, hereby fully, completely, finally, and conclusively resolve, compromise, release, and discharge Defendants from liability solely for the claims for declaratory and injunctive relief set forth in the Complaint, consistent with Federal Rule of Civil Procedure 23(b)(2).

20. **Continuing Jurisdiction.** The Court shall retain continuing jurisdiction with respect to implementation and enforcement of the terms of this Consent Order, which consists of the entry of the declaratory judgment reflected in Paragraph 12 and the award of any fees pursuant to Paragraph 11, for a period of four years following entry of this Consent Order. With respect to the entry of the declaratory judgment referenced above, the Court's continuing jurisdiction shall be limited to an order confirming the existence of the judgment between the relevant parties.

21. In addition to the foregoing, the parties may enforce the terms of this order in this Court pursuant to applicable law and the rules of civil procedure. All judicial proceedings related to enforcement of this Consent Order shall be brought only in this Court. The parties submit to the jurisdiction of this Court for these purposes, provided that, as a condition precedent to any assertion that USDA is in breach of the terms of this Consent Order, Plaintiffs shall advise USDA in detail and in writing, and USDA shall be allowed a period of

thirty days after receipt of such written notice within which to cure such alleged breach before any enforcement or other action may be filed in this Court.

**SO ORDERED.**

November 19, 2026.

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE